# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TOWN OF EAST HAVEN AND THE EAST ) <br> HAVEN BOARD OF POLICE ) <br> COMMISSIONERS, ) <br> ) <br> Defendants. ) <br> ) | CIVIL NO. 3:12-CV-1652 (AWT) <br><br><br><br> November 20, 2012 |

## JOINT MOTION FOR ENTRY OF THE PARTIES' AGREEMENT ON CONSTITUTIONAL AND EFFECTIVE POLICING AS AN ORDER AND FOR CONDITIONAL DISMISSAL

The Parties, having entered into an Agreement for Effective and Constitutional Policing ("Agreement"), attached as Exhibit A, hereby jointly and respectfully move this Court for approval and entry of the Agreement as an Order. The Parties further respectfully request that this Court conditionally dismiss the United States' Complaint without prejudice, pursuant to Fed. R. Civ. P. 41(a)(2), and retain jurisdiction over the Agreement for enforcement purposes.

Through the Agreement, the Parties seek to resolve litigation filed by the United States pursuant to the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141 ("Section 14141"). The United States' Complaint alleges that the East Haven Police Department ("EHPD") engaged in a pattern or practice of systematically discriminating against Latinos, a pattern or practice of use of excessive force, and a pattern or practice of unreasonable searches and seizures, in violation of the Fourth and Fourteenth Amendments, and Section 14141.

The Town of East Haven and the East Haven Board of Police Commissioners (Defendants) deny the existence of any current or past pattern or practice of unconstitutional conduct by the Defendants or their agents, including EHPD and its officers.  The Agreement addresses the policies, procedures, training, and oversight that the United States claims contributed to the alleged pattern or practice of constitutional violations and is intended to ensure that police services are delivered to the East Haven community in a manner that complies with the Constitution and laws of the United States.

## DISCUSSION

Entry of the Agreement is appropriate because the Agreement is fundamentally fair, adequate, and reasonable; resulted from arms-length negotiations by sophisticated parties; is consistent with the purpose of Section 14141; and is the most effective way to implement desired reforms of EHPD.  Moreover, public policy favors settlement, particularly in complex litigation such as the pattern or practice claim brought by the United States here.  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.") (citation omitted); *Brown v. Nationscredit Commercial*, No. 3:99-CV-592 (EBB), 2000 WL 888507, at *1 (D. Conn. 2000) ("The power of a trial court to enter a judgment enforcing a settlement agreement has its basis in the policy favoring the settlement of disputes and the avoidance of costs and time-consuming litigation.") (citation omitted).

To assess whether to approve a proposed settlement, courts consider whether the settlement is fair, adequate, and reasonable.  *See Binker v. Commonwealth of Pa.*, 977 F.2d 738, 747-48 (3d Cir. 1992) (noting that even non-class action settlement agreements "are agreed to be subject to a 'universal' standard, that of fairness, adequacy and reasonableness"); *Kirkland v.*

*New York State Dept. of Correctional Services*, 711 F.2d 1117, 1128-29 (2d Cir. 1983) (explaining, in Title VII employment discrimination context, that voluntary compromises "enjoy a presumption of validity" unless they contain provisions "that are unreasonable, unlawful, or against public policy") (citations omitted).  Consistent with these requirements, the Agreement is fundamentally fair, adequate, and reasonable; is fully consistent with the public objectives of Section 14141; was negotiated at arm's length; and offers the best path for improving EHPD.

      A.      <u>The Agreement Furthers the Objectives of Section 14141</u>

Congress enacted Section 14141 to forbid law enforcement officers from engaging in a pattern or practice "that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 42 U.S.C. § 14141.  It contains no limitation on the nature of the constitutional or federal rights that it protects.  Where a pattern or practice of constitutional or statutory violation is alleged to exist, Congress granted the Justice Department the authority to sue police departments to correct the underlying policies that lead to the violation.  H.R. Rep. No. 102-242, pt. 1, at 137.

Here, the Agreement's substantive provisions relate directly to the policies, procedures, training, and oversight that the United States claims contribute to the alleged pattern or practice of discrimination against Latinos, the alleged use of excessive force, and the alleged unconstitutional searches and seizures, in violation of the Fourth and Fourteenth Amendments, and Section 14141.  In the United States' Complaint, the United States further claims that this pattern or practice is evidenced by a number of specific incidents, as well as by statistical analysis of traffic stops conducted by EHPD officers.  In the Agreement, the Parties negotiated and agreed upon revisions to EHPD's policies, procedures, and practices to address the allegations contained in the findings letter attached to the United States' Complaint.  The nexus

between these reforms and the alleged pattern or practice of constitutional violations provides strong evidence that the Agreement furthers the purpose of Section 14141.

      B.      <u>The Agreement Derives From Arms-Length Negotiations and Is Supported by the United States' Investigation of EHPD's Policing Activities</u>

The process of formulating the Agreement underscores its reasonableness. The Agreement's substantive provisions derive from lengthy negotiations between sophisticated parties and relate to the findings of the United States' investigation of EHPD's policing activities.

           i.      *Arms-Length Negotiations*

The Parties entered into the Agreement following extensive negotiations over policies and procedures that are designed to prevent EHPD officers from engaging in a pattern or practice of constitutional or statutory violations. These negotiations underscore the Agreement's reasonableness. Indeed, negotiations over the Agreement began not long after the United States announced, on December 19, 2011, that its investigation into EHPD's policing activities had found reasonable cause to believe that EHPD engaged in a pattern or practice of discrimination against Latinos and other violations. The United States' findings also identified concerns about certain practices and systems that allegedly failed to ensure that individuals are free from unlawful searches and seizures and the use of excessive force.

The Agreement reflects the Parties' efforts to ensure that the causes of these alleged violations are remedied and do not recur. The Parties invested significant time negotiating the Agreement. During this process, the Parties consulted with police professionals to ensure that each remedial measure in the Agreement is tailored to address specific concerns and may be reasonably implemented. This adversarial posture, combined with the respective duties of these

government agencies towards those they represent, provides further assurance that the Agreement is fair, adequate, and reasonable, and may be relied upon by the Court in so finding.

        ii.     *The Agreement is Tailored to the Findings of the United States' Investigation*

Moreover, the Agreement is appropriate given the findings of the United States' investigation of the EHPD. The investigative team consisted of lawyers and other staff from the Civil Rights Division of the United States Department of Justice (collectively, "DOJ"), working closely with police professionals with expertise in the areas on which the investigation focused. The Town of East Haven and EHPD cooperated with the investigation.

During its investigation, DOJ and its police experts gathered information through interviews and meetings with EHPD officers, supervisors and command staff, as well as members of the public, Town officials, and other community stakeholders. The investigation included on and off-site review of a wide array of documents, and multiple on-site tours in which DOJ personnel and experts accompanied EHPD officers during their shifts.

The evidence underlying the United States' investigative findings is summarized in the December 19, 2011, report of that investigation. The Agreement is based upon the results of the United States' investigation, and reflects the input of scores of individuals, including EHPD officers and members of the community.

This record demonstrates that the Agreement is tailored to the alleged deficiencies identified by the United States. Accordingly, it is consistent with and furthers the objectives of Section 14141 because it embodies the agreement of the Town and its police department to ensure that no pattern or practice of police misconduct exists. The Agreement requires EHPD to implement numerous reforms, namely: use of force; training on use of force; unlawful stops, searches and seizures; training on stops, searches and seizures; discriminatory policing; training

related to bias-free policing; supervisory review; and complaint intake, investigation, and adjudication. The Agreement also includes ongoing mechanisms to solicit input from members of the East Haven community.

        C.      <u>Implementing the Agreement Is Necessary To Achieve Critical Reforms to EHPD</u>

Finally, approval and entry of the Agreement is appropriate here because voluntary compliance is more likely to conserve public resources and accomplish the statutory goals of Section 14141 than orders imposed at the end of protracted litigation. *See* Fed. R. Civ. P. 16(b) advisory committee's note ("Since it obviously eases crowded court dockets and results in savings to the litigants and the judicial system, settlement should be facilitated at as early a stage of the litigation as possible."); *Kirkland*, 711 F.2d at 1128 n.14 (Explaining that in the Title VII context, settlements "may produce more favorable results for protected groups than would more sweeping judicial orders that could engender opposition and resistance."); *United States v. City of Jackson, Miss.*, 519 F.2d 1147, 1152 n.9 (5th Cir. 1975) ("Because of the consensual nature of the decree, voluntary compliance is rendered more likely . . . . At the same time, the parties . . . minimize costly litigation and adverse publicity and avoid the collateral effects of adjudicated guilt."). Indeed, "the value of voluntary compliance is doubly important when it is a public employer that acts, both because of the example its voluntary assumption of responsibility sets and because the remediation of governmental discrimination is of unique importance." *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 290 (1986) (O'Connor, J., concurring).

Here, the Agreement provides an opportunity to continue the Parties' considerable efforts to reform the East Haven Police Department. To date, the United States has conducted a comprehensive investigation that identified alleged deficiencies in EHPD's policies and procedures; the Town has begun to institute its own reform efforts, including through the hiring

of an interim Police Chief; and the Parties jointly negotiated a comprehensive agreement to address the alleged causes of EHPD officers' violations and to resolve this litigation.

The Parties agree that the measures agreed upon in the Agreement will enhance EHPD officers' ability to provide effective and constitutional policing, will promote transparency and accountability between EHPD and the community, and will increase public confidence in EHPD. Accordingly, the Agreement will assist both the Town as a whole and EHPD. As a result, the Agreement will improve relationships with various constituencies and facilitate effective community policing. Settling this dispute without protracted litigation thus allows the Town, the United States, and EHPD officers to achieve one of their primary goals: ensuring effective and constitutional policing for the Town of East Haven. This undertaking will enjoy far broader support as part of the negotiated Agreement than as one ordered by the court after litigation.

## CONCLUSION

The Agreement is fundamentally fair, adequate, and reasonable and should be approved and entered by this Court. Over several months, the Parties negotiated the Agreement to provide a framework for reforming EHPD to ensure that the Department's policing activities will protect the constitutional rights of all members of the East Haven community, improve safety and security, and increase public confidence in the police. Moreover, the Agreement represents a compromise forged through lengthy negotiations between experienced and sophisticated litigants, aided on both sides by police professionals, and with an eye towards their shared goals of reform. The Agreement furthers the shared goals of the parties, as well as the intent of Congress in enacting Section 14141. For those reasons and the others described herein, the parties respectfully request that this Court enter the Agreement as an Order of the Court,

conditionally dismiss the United States' Complaint without prejudice, and retain jurisdiction over the Agreement for enforcement purposes.

Respectfully submitted this 20<u>th</u> day of <u>November</u>, 2012.

| | |
|---|---|
| DAVID FEIN<br>United States Attorney<br>District of Connecticut | THOMAS E. PEREZ<br>Assistant Attorney General<br>Civil Rights Division |
| *s/John Hughes*<br>JOHN HUGHES, Civil Chief<br>Assistant United States Attorney<br>District of Connecticut<br>Federal Bar No. ct05289 | ROY L. AUSTIN, JR.<br>Deputy Assistant Attorney General<br>Civil Rights Division |
| | Jonathan M. Smith<br>Chief |
| MICHELLE McCONAGHY<br>Assistant United States Attorney<br>Federal Bar No. ct27157<br>District of Connecticut<br>U.S. Attorney's Office<br>157 Church Street<br>23rd Floor CT Financial Center<br>New Haven, CT  06510<br>Tel:  (203) 821-3700<br>Fax:  (203) 773-5373<br>Michelle.McConaghy@usdoj.gov | LUIS SAUCEDO<br>Acting Deputy Chief<br><br>ANIKA N. GZIFA<br>AARON S. FLEISHER<br>Trial Attorneys<br>U.S. Department of Justice<br>Civil Rights Division<br>Special Litigation Section<br>950 Pennsylvania Avenue, NW<br>Washington, DC  20530<br>Tel:  (202) 514-6255<br>Fax:  (202) 514-4884<br>Anika.Gzifa@usdoj.gov |
| | Attorneys for the United States |

    /s/ *Lawrence C. Sgrignari*
LAWRENCE C. SGRIGNARI
Federal Bar No. ct09010
SHEILA HALL
Federal Bar No. ct22566
Gesmonde, Pietrosimone and Sgrignari, LLC
3127 Whitney Avenue
Hamden, CT  06518
Tel:  (203) 407-4200
Fax: (203) 407-4210
lsgrignari@gpsp.com

Attorney for Defendants

## CERTIFICATION

I hereby certify that on November 20, 2012, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

A copy of the foregoing was mailed to:

Lawrence C. Sgrignari
Sheila Hall
Gesmonde, Pietrosimone and Sgrignari, LLC
3127 Whitney Avenue
Hamden, CT  06518


*s/John Hughes*
JOHN B. HUGHES
CHIEF, CIVIL DIVISION